STATE OF ALASKA, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 92–314L.

United States Court of Federal Claims.

Feb. 8, 1995.

Ronald G. Birch, Washington, DC, atty. of record, for plaintiff.

Marc A. Smith, Washington, DC, with whom was Asst. Atty. Gen. Lois J. Schiffer, for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

### INTRODUCTION

The State of Alaska, plaintiff in this matter, seeks just compensation under the Fifth Amendment[1] from the federal government for an alleged taking of property. In short, Alaska charges that the taking occurred as a result of federal statutory and regulatory restrictions on the export of her crude oil, denying her the full economic benefit of her property rights in such oil located beneath the surface of state-owned land. Defendant, the United States, has moved to dismiss said complaint for lack of jurisdiction on two grounds. In this regard, the United States first contends that 28 U.S.C. § 1500 deprives this court of jurisdiction, and, secondly, that the claim is also time-barred under 28 U.S.C. § 2501. Defendant's jurisdictional arguments are contained in an original Motion to Dismiss (June 1, 1992) as well as an Amended Motion to Dismiss (September 2, 1994), in which defendant also moves to dismiss for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(4). · In response to defendant's amended motion, plaintiff filed a Motion to Strike Defendant's Amended Motion to Dismiss alleging, *inter alia*, that defendant had waived its Rule 12(b)(4) "failure to state a claim" defense by not raising it in the original motion to dismiss.

Because the defense of lack of subject matter jurisdiction (RCFC 12(b)(1)) may never be waived, and because the court must first consider challenges to its jurisdiction whenever appropriately raised (RCFC 12(h)(3)), we begin by considering defendant's asserted jurisdictional grounds for dismissal. These issues have been fully briefed by the parties. After a careful review of the competing positions and contentions of counsel, we conclude that, while defendant's § 1500 motion is void of merit, jurisdiction in

---

1. The Fifth Amendment provides in pertinent part: "[P]rivate property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V.

this court is nevertheless lacking because the petition was not timely filed, as required by 28 U.S.C. § 2501. Accordingly, we are without power to entertain plaintiff's claim, and the petition must be dismissed. As a result, we do not address plaintiff's motion to strike, nor do we address defendant's remaining grounds for dismissal.

## FACTS

In 1958, Congress enacted the Alaska Statehood Act, Pub.L. No. 85–508, 72 Stat. 339 (1958), providing for the admittance of the 49th state to the Union. Shortly thereafter, the people of Alaska ratified statehood in a popular referendum, and, on January 3, 1959, Alaska was formally admitted to the Union of the United States as a sovereign state by a presidential proclamation. In that connection, under section 6 of the Statehood Act, Alaska was granted extensive land holdings to be selected by her from the undeveloped, federally-owned land within her borders. Included with the foregoing land granted to Alaska were the mineral rights associated with that land.

Among the lands which became state-owned public property, Alaska chose parcels of land located on Alaska's North Slope (the ANS). Following thereafter, in 1968, major oil reserves were discovered on state-owned land at Prudhoe Bay on the ANS. Additional significant oil fields were later discovered on other state-owned parcels on the ANS. In order to help expedite the development of ANS oil resources for domestic use, Congress passed the Trans–Alaska Pipeline Authorization Act (TAPAA), Pub.L. No. 93–153, 87 Stat. 584, *codified in part at* 43 U.S.C. §§ 1651–55 (1988 & Supp. V 1993), in 1973. This act authorized the construction of a pipeline, traversing federal land for more than 600 miles, from Prudhoe Bay to the port of Valdez, Alaska. Under the TAPAA, Congress granted the necessary rights of way and waived compliance with the National Environmental Policy Act for the Trans–Alaska Pipeline System (TAPS). Production of the pipeline began at Prudhoe Bay in 1977.

Regulations governing the export of Alaskan oil, and other exports, in general, date back at least to 1949. In that year, the Export Control Act (ECA), Pub.L. No. 81–11, 63 Stat. 7 (1949), took effect, and gave the President authority to impose export restrictions on, *inter alia,* petroleum. This act remained in effect through repeated Congressional reauthorizations until 1969, when the Export Administration Act of 1969 (1969 EAA), Pub.L. No. 91–184, 83 Stat. 841 (1969), was enacted. Under the 1969 EAA, the President had broad discretion to restrict the export of any product in order "to protect the domestic economy from the excessive drain of scarce materials and to reduce the serious inflationary impact of abnormal foreign demand."

Later, in 1973, when the TAPAA was enacted, domestically-produced oil transported by pipelines on federal rights of way was made subject to export restrictions contained in section 28 of the Mineral Leasing Act (MLA) as amended. 30 U.S.C. § 185 (1988 & Supp. V 1993). The MLA provided that such oil was subject to all of the limitations and licensing requirements of the 1969 EAA. 30 U.S.C. § 185(u). Furthermore, the export of oil transported over federal rights of way was prohibited unless the President made findings that: (1) export would not diminish the total quantity or quality of oil available to the United States; (2) export was in the national interest; and (3) export was in accordance with the 1969 EAA. *Id.* Section 28 of the MLA was also amended to make it applicable to oil transported on the TAPS. Federal Land Rights–of–Way Act of 1973, Pub.L. No. 93–153, 87 Stat. 576 (1973). Thus, from the beginning, it can be seen that TAPS oil has been restricted from export unless the President makes certain findings concerning the national interest, etc.

Four years later, in 1977, the 1969 EAA was amended, further restricting the export of crude oil. Pub.L. No. 95–52, 91 Stat. 235 (1977). Specifically, a provision was added preventing the export of crude oil transported over federal rights of way unless the President made various findings including that the export would have a positive effect on consumer oil prices and that exports were made only pursuant to contracts which could be terminated in the event of an oil shortage in the United States. Finally, in 1979, Con-

gress repealed the 1969 EAA and enacted the Export Administration Act of 1979 (1979 EAA). 50 U.S.C.App. § 2401 *et seq.* (1988 & Supp. V 1993). Pursuant to section 7(d) of the 1979 EAA, only TAPS oil is subject to this export restriction. 50 U.S.C.App. § 2406(d). However, other domestically-produced crude oil transported over federal rights of way remains subject to the provisions of the MLA restricting export. The 1979 EAA provided that TAPS oil may only be exported *if* the President finds, *inter alia,* that the acquisition costs of oil refiners will be lowered as a result of the export, and that at least 75% of the savings will be passed on to consumers. *Id.* Moreover, these required presidential findings must be presented to Congress and approved by a joint resolution (and later enacted into law) in order for TAPS oil to be authorized for export. *Id.*

We note that the 1979 EAA export restrictions have remained in force to date through a series of executive orders and congressional amendments of the 1979 EAA.[2] Against that background, plaintiff alleges that the provisions of that act, etc., constitute a complete ban on the export of oil produced in Alaska. Because of such, on April 30, 1992, Alaska filed suit in the United States District Court for Alaska, seeking a declaratory judgment and a permanent injunction, as well as challenging the constitutionality of section 7(d) of the 1979 EAA. That same day, plaintiff also filed a complaint in this Court whereby she sought compensation from the United States for the alleged taking of property effected by that statutory provision.

## CONTENTIONS OF THE PARTIES

### I. *Defendant*

The United States contends that this court is without subject matter jurisdiction to hear this case and that, therefore, the petition must, of course, be dismissed. First, defen-

dant argues that jurisdiction is wanting in view of the bar under 28 U.S.C. § 1500. Section 1500 provides that the Court of Federal Claims shall not have jurisdiction over claims for which the plaintiff has an action pending in another court against the United States at the time when the cause of action alleged in such suit arose. Defendant contends, in this connection, that, because Alaska filed and has pending a constitutional challenge to the 1979 EAA crude oil export restriction in the District Court for Alaska, this court may not concomitantly exercise jurisdiction over a claim here posturing the same operative facts. We do not believe said motion to be well pled and, thus, we take issue therewith.

Second, the United States maintains that plaintiff's claim is also barred by the six-year statute of limitations applicable to actions in the Court of Federal Claims. 28 U.S.C. § 2501. Defendant avers that plaintiff's claim accrued, at the latest, in 1979 with the passage of the EAA, which occurred more than six years prior to the filing of this suit on April 30, 1992. This is consistent with the complaint, contends defendant, which avers that the 1979 EAA crude oil export ban resulted in the alleged taking. Furthermore, defendant asserts that the subsequent extensions of the export ban did not give rise to new claims, *i.e., or* new statute of limitations accrual dates, because the ban continued in effect uninterrupted over this entire period. For these reasons, the United States strenuously contends that the complaint should be dismissed for lack of subject matter jurisdiction, and we agree.

### II. *Plaintiff*

The State of Alaska disputes the foregoing contentions of defendant and insists that jurisdiction in the Court of Federal Claims is proper. Relying on *Loveladies Harbor, Inc. v. United States,* 27 F.3d 1545 (Fed.Cir.1994), Alaska maintains that § 1500 does not bar

---

**2.** Pub.L. No. 98–108, 97 Stat. 744 (1983); Exec.Order No. 12,444 (1983), 3 C.F.R. § 214 (1984); Pub.L. No. 98–207, 97 Stat. 1391 (1983); Pub.L. No. 98–222, 98 Stat. 36 (1984); Exec.Order No. 12,470 (1983), 3 C.F.R. § 168 (1985); Pub.L. No. 99–64, 99 Stat. 155 (1985); Pub.L. No. 100–418, 102 Stat. 1362 (1988); Exec.Order

No. 12,730, 55 Fed.Reg. 40,373 (1990), *cont'd by notice,* 56 Fed.Reg. 49,385 (1991), *cont'd by notice,* 57 Fed.Reg. 44,649 (1992); Pub.L. No. 103–10, 107 Stat. 40 (1993); Exec.Order No. 12,923, 59 Fed.Reg. 34,551 (1994); Pub.L. No. 103–277, 108 Stat. 1407 (1994); Exec.Order No. 12,924, 59 Fed.Reg. 43,437 (1994).

jurisdiction because the claim pursued in the district court suit was *not the same* as the claim being pressed at bar.

Moreover, plaintiff alleges that this action is also not barred by the statute of limitations, and urges the court to find, in this connection, that the claim did not accrue in 1979, as defendant contends. In support of this position, plaintiff avers that the alleged taking, at issue here, occurred over various periods of time; that the amount of damages and duration of the ban were uncertain; and that the extent of the taking has not stabilized. Accordingly, Alaska concludes that the times of the taking are difficult to pin down. Given the above, Alaska further contends that each governmental act, extending the duration of the ban on the export of her oil, caused a separate claim to accrue. Therefore, plaintiff asks the court to hold that the complaint was (at least in part) timely filed.

## DISCUSSION

I. *Motion to Dismiss for Lack of Subject Matter Jurisdiction*

■ The United States has moved, pursuant to RCFC 12(b)(1),[3] to dismiss this action for lack of subject matter jurisdiction. This fundamental defense of power to hear is one which can never be waived and must be considered by the court whenever and however raised. RCFC 12(h)(3). Therefore, defendant alleges that this court is without power to hear and to decide this case because: (1) 28 U.S.C. § 1500 deprives the court of jurisdiction over plaintiff's claim; and (2) the petition is time-barred under 28 U.S.C. § 2501. If either of these arguments is accepted by the court, as well as grounded in law, then the petition must, of course, be dismissed for lack of jurisdiction.

■ Generally, when considering a motion to dismiss, the court will presume all *facts* alleged in the complaint to be true and correct. *Reynolds v. Army and Air Force Exchange Service,* 846 F.2d 746, 747 (Fed. Cir.1988); *Creppel v. United States,* 30 Fed. Cl. 323, 328, *aff'd in part and rev'd in part,* 41 F.3d 627 (Fed.Cir.1994). Moreover, and in this connection, these facts must be construed favorably to the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Given these presumptions, a party who seeks the exercise of this court's jurisdiction in his favor must nevertheless allege in his complaint "facts essential to show" that jurisdiction is proper. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Catellus Dev. Corp. v. United States,* 31 Fed.Cl. 399, 404 (1994). A plaintiff in the Court of Federal Claims, therefore, bears the burden of establishing jurisdiction by a preponderance of the evidence. *Reynolds,* 846 F.2d at 747; *Catellus,* 31 Fed.Cl. at 405. Mindful of the foregoing standards, we shall now proceed, *seriatim,* to consider the substance of the grounds of defendant's motion to dismiss for lack of subject matter jurisdiction.

II. *Section 1500 (28 U.S.C. § 1500)*

■ Defendant's first ground for dismissal in its motion to dismiss is premised on 28 U.S.C. § 1500 (Supp. V 1993), which states, in pertinent part, as follows:

> The United States Court of Federal Claims shall not have jurisdiction[[4]] of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States. . . .

Because plaintiff also filed a complaint on April 30, 1992, and thereby has a claim pend-

---

**3.** Rule 12(b) states, in pertinent parts, as follows: "How Presented. Every defense . . . to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto . . . except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter; . . ."

**4.** Subject matter jurisdiction turns on the facts upon filing, thus the Supreme Court stated in *Keene Corp. v. United States,* —— U.S. ——, ——, 113 S.Ct. 2035, 2040, 124 L.Ed.2d 118 (1993), that "[T]he jurisdiction of the court depends upon the state of things at the time of the action brought." *Loveladies Harbor,* 27 F.3d at 1548.

ing,[5] in the United States District Court for Alaska "for or in respect to" the same operative facts and claim presented and filed in the instant case on April 30, 1992, the United States now contends that § 1500 deprives this court of subject matter jurisdiction at bar. Resolution of this argument, therefore, turns on the meaning of the word "claim" as used in 28 U.S.C. § 1500. Only if the actions simultaneously filed in the United States District Court and the United States Court of Federal Claims were in pursuance of the *same claim* will § 1500 operate to divest this court of subject matter jurisdiction over plaintiff's suit.

Guidance as to the proper interpretation of the word "claim" as used in § 1500 has recently been provided by the U.S. Court of Appeals for the Federal Circuit. *See Loveladies Harbor*, 27 F.3d 1545. In that case, plaintiff, the owner of a wetlands tract, filed a claim for monetary relief for denial of a development permit in the Court of Federal Claims while an appeal of an earlier district court suit was still pending. The United States responded thereto by arguing that, under § 1500, jurisdiction in the Court of Federal Claims was lacking because the district court suit had been based on the same operative facts as the claim in the U.S. Court of Federal Claims. Construing the term "claims," the Federal Circuit, sitting *en banc*, held that the Court of Federal Claims is precluded from hearing a claim under § 1500 only when the claim pending in another court arises "from *the same operative facts*" and seeks "*the same relief.*" *Id.* at 1551. Because the district court suit at issue in *Loveladies* sought to challenge the validity of the permit denial by seeking injunctive relief, while the suit in this court sought monetary compensation for said denial, the Court of Appeals for the Federal Circuit found that the claims did not seek the same relief. Accordingly, the court held that jurisdiction over the monetary claim in the Court of

Federal Claims was proper and was not barred by § 1500.

Here at bar, the State of Alaska is seeking just monetary compensation pursuant to the Fifth Amendment's Takings Clause for an alleged regulatory taking of her property. On the other hand, by the simultaneous complaint filed in the U.S. District Court, plaintiff sought declaratory and injunctive relief. (Complaint, No. 92–364 Civ., D.Alaska). While the factual allegations contained therein are virtually identical to those in the complaint filed by plaintiff in this court, the Alaska district court suit seeks entirely different substantive relief from the relief sought here at bar. For example, in her prayer for relief in the district court, plaintiff requested that the court *declare* that certain statutes and regulations, applicable to the export of crude oil from Alaska, are unconstitutional under the Tenth Amendment, U.S. Const. amend. X, the Guarantee Clause, U.S. Const. art. IV, § 4, the Port Preference Clause, U.S. Const. art. I, § 9, cl. 6, and the separation of powers requirement. U.S. Const. art. I, § 7, cl. 2, 3. Alaska further requested the district court to *enjoin* the United States from enforcing those legal provisions. By contrast, in the complaint filed in the Court of Federal Claims, plaintiff prays that a monetary judgment be entered against the United States in an amount in excess of $2.5 billion. Therefore, against this background, it is clear beyond cavil that plaintiff's two complaints seek entirely different substantive relief, notwithstanding the fact that they may be premised on the exact same set of operative facts.

Given the foregoing, it is indisputable that this case is on all fours with *Loveladies*, which case is binding precedent in this court. Because plaintiff's district court complaint sought different relief from that filed here, as was true in *Loveladies*, *id.* at 1554,[6] we find that § 1500 does *not* bar jurisdiction in the Court of Federal Claims over this claim. *Id.* at 1551. This is so, says *Loveladies, id.*, for

---

**5.** Plaintiff currently has an appeal pending before the Ninth Circuit in the district court action. (Def.Am.Mtn.Br. at 12, n. 13).

**6.** "[T]he claims in the two courts are for distinctly different and not the same or even overlapping

relief—this case presents the straightforward issue of plaintiffs 'who seek distinctly different types of relief in the two courts,'" quoting *UNR/Keene*, — U.S. at ———, 113 S.Ct. at 2044–45.

the reason that "for the Court of Federal Claims to be precluded from hearing a claim under § 1500, the claim pending in another court must arise [not only] from the same operative facts, [but] . . . must [also] seek the same relief."[7] Consequently, we now turn to defendant's second jurisdictional argument seeking dismissal of the First Amended Complaint For Just Compensation, namely the six-year statute of limitations.

### III. *Statute of Limitations (28 U.S.C. § 2501)*

#### A. *Introduction*

The second ground advanced by defendant in support of its assertion that this court lacks subject matter jurisdiction over Alaska's claim is that the claim is time-barred by the statute of limitations. The general statute of limitations for actions in the Court of Federal Claims is set forth at 28 U.S.C. § 2501. This section provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim accrues." 28 U.S.C. § 2501 (1988 & Supp. V 1993).

It is well-settled that this statutory time limit on claims filed against the United States is jurisdictional. *Soriano v. United States,* 352 U.S. 270, 273, 77 S.Ct. 269, 271–72, 1 L.Ed.2d 306 (1957); *Hart v. United States,* 910 F.2d 815, 818 (Fed.Cir. 1990); *Creppel,* 30 Fed.Cl. at 328; *Catellus,* 31 Fed.Cl. at 404. Moreover, said statute of limitations is an immutable condition of the government's waiver of sovereign immunity. *Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1576–77 (Fed.Cir. 1988). As a result, it must therefore be strictly construed. *Id. See also, Block v. North Dakota ex rel. Bd. of University and School Lands,* 461 U.S. 273, 287, 103 S.Ct. 1811, 1819–20, 75 L.Ed.2d 840 (1983); *Kirby v. United States,* 201 Ct.Cl. 527, 539 (1973).

In other words, the United States, as a sovereign, has only consented to be sued for monetary relief when a claimant has strictly complied with the statute of limitations. Because only Congress may waive federal sovereign immunity, courts are not free to create or carve out exceptions to, or to extend by implication, the statute of limitations. *See Hart,* 910 F.2d at 819; *Hopland,* 855 F.2d at 1577; *Kirby,* 201 Ct.Cl. at 539. Accordingly, if a petition on a claim is filed *more than six years* after such claim has accrued, the petition *must* be dismissed as this court has absolutely no power to entertain a time-barred claim.[8]

#### B. *The Original and Amended Complaints*

In the case at bar, Alaska has filed both an original Complaint (April 30, 1992) and a First Amended Complaint (July 14, 1994) in this court. Petition on any claims contained within these pleadings must, of course, have been filed within six years of each claim's accrual in order to comply with the statute of limitations. With regard to plaintiff's original complaint, the claim(s) stated therein must have accrued on or after April 30, 1986, to be timely. The amended complaint poses a slightly more complex issue.

Amended pleadings are generally governed by Rule 15 of the Rules of this Court. RCFC 15(c) provides:

> Whenever the claim or defense asserted in the amended pleading arose out of the same conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

Thus, in connection with an amended complaint, it is critical to ascertain whether the claim(s) asserted therein "arose out of the same conduct, transaction, or occurrence" as the claim(s) set forth in the original complaint. *See Econ. Dev. and Indus. Corp. v.*

---

7. "We know of no case arising from the same operative facts in which § 1500 has been held to bar jurisdiction over a claim praying for relief distinctly different from that sought in a pending proceeding." *Id.* at 1551.

8. This assumes, of course, that no factual circumstance has tolled the running of the statutory period. For the present purposes, we do not consider this issue, *i.e.,* whether the statute of limitations was tolled, simply because plaintiff has failed to argue, or even suggest, that a tolling of the statute has occurred.

*United States,* 13 Cl.Ct. 590, 598–99 (1987) (finding that amended complaint related back to the date of the original complaint).

If an amended complaint states a claim which arises from the same conduct, transaction, or occurrence (and especially if it states the same claim arising from the same events) as set forth in the original complaint, then it must be considered timely if the *original complaint* was filed within six years from the date upon which that claim accrued. *Id.* Conversely, an amended claim based on different conduct, transactions, or occurrences than what was contained in the original complaint can only be considered timely if the *amended complaint* was filed within six years of that claim's accrual. Based on the foregoing, Alaska's amended complaint would only relate back to the date of the original complaint if it arose out of the same conduct, transaction, or occurrence. Accordingly, an analysis of the two complaints is necessary in order to ascertain whether or not Alaska's amended complaint relates back pursuant to RCFC 15(c).

Upon a careful examination, it is clear that Alaska's two complaints arise out of the same conduct, transaction, or occurrence. Indeed, both pleadings state two counts of "taking of property without just compensation" each, and both seek precisely the same damages and relief. The facts and occurrences recounted in the amended complaint are virtually identical to those set forth in the original complaint. In fact, the amended complaint frequently quotes the original pleading verbatim. Rather than stating a new and separate claim or alleging different facts, the amended complaint represents Alaska's attempt to recharacterize the property interest that was allegedly taken. Because the two complaints are substantively indistinguishable, we hold that Alaska's amended complaint not only arises out of the same conduct, transaction, or occurrence, but it also states the exact same claim. Accordingly, Alaska's amended complaint relates back to the date of the original complaint pursuant to RCFC 15(c).

Therefore, because the amended complaint relates back to the date of the original filing (April 30, 1992), any claim stated therein was timely filed if it accrued on or after April 30, 1986. Furthermore, despite the several counts of uncompensated takings contained in the pleadings, Alaska has essentially alleged a single cause of action. Consequently, this cause of action is time-barred under 28 U.S.C. § 2501 and must be dismissed if it accrued *prior to April 30, 1986.* Because we conclude, as explicated hereinafter, that Alaska's takings claim accrued upon the enactment of the Export Administration Act of 1979, we find that this action is time-barred under 28 U.S.C. § 2501.

### C. *Accrual*

A cause of action is generally said to accrue when all of the events necessary to fix the alleged liability of the government have occurred and the claimant is legally entitled to bring suit. *Kinsey v. United States,* 852 F.2d 556, 557 (Fed.Cir.1988); *Tabbee v. United States,* 30 Fed.Cl. 1, 4 (1993). "It is [therefore] axiomatic that a cause of action for an unconstitutional taking accrues at the time the taking occurs." *Alliance of Descendants of Texas Land Grants v. United States,* 27 Fed.Cl. 837, 842 (1993). *See also Steel Improvement & Forge Co. v. United States,* 355 F.2d 627, 631 (Ct.Cl.1966). Thus, it is critical that the court determine the point at which the governmental conduct allegedly effected a taking. This factual determination is often imprecise and in the nature of a jury verdict. *Applegate v. United States,* 28 Fed.Cl. 554, 563 (1993), *rev'd,* 25 F.3d 1579 (Fed.Cir.1994) (quoting *Barnes v. United States,* 538 F.2d 865, 873 (Ct.Cl. 1976)).

In order to ascertain that point in time when the alleged taking occurred, we must first define plaintiff's claim. To that end, the court necessarily must identify the property allegedly taken, the governmental action which allegedly effected said taking, and the time of such compensable act. In both complaints, Alaska asserts that the property which was taken was her subsurface mineral rights [9] in oil contained beneath

9. "The concept of property in the fifth amend-    ment includes the entire bundle of rights inher-

state-owned land. The governmental action which allegedly "took" this property was the ban on exports of crude oil transported on the TAPS (TAPS oil).[10] Plaintiff claims that the export ban effected a taking of her mineral rights in oil by raising the transportation costs of producing that oil, thereby diminishing the royalty payments she received on the oil, reducing the market value of oil development leases on state-owned land, and making less of her oil extractable at a profit. In essence, Alaska charges that her right to dispose of (*i.e.*, sell, lease, etc.) state-owned oil was made less valuable as a result of the export ban.

■ Having identified the property and the governmental action involved in the alleged taking, we are now in a position to determine when plaintiff's claim accrued. The current ban on the export of TAPS oil was enacted by Congress as a part of the 1979 EAA. 50 U.S.C.App. § 2406(d). It was the enactment of the 1979 EAA alone which put this ban in place, and it was this ban which plaintiff alleges effected a taking of plaintiff's property. Therefore, it is abundantly clear that the relevant governmental action occurred in 1979. Furthermore, at that time the alleged liability of the United States was fixed. If the export ban took Alaska's property by reducing the market value of state-owned oil rights, then Alaska would have been entitled to institute a lawsuit for just compensation under the Fifth Amendment from the day the ban took effect. Accordingly, plaintiff's claim necessarily accrued when the export ban went into effect, in 1979. Since Alaska's claim accrued more than six years prior to the filing of the petition in this court, said claim is time-barred by the statute of limitations.

Alaska naturally argues that the claim first accrued less than six years prior to the filing of the original complaint on April 30, 1992. While plaintiff fails to enlighten the court as to the specific time when her claim did ac-

crue, she hospitably assures the court that it was after April 30, 1986. Such a bare allegation is insufficient to meet the burden of confirming our jurisdiction. *Catellus*, 31 Fed.Cl. at 405–09 (dismissing action where landowner failed to carry his burden of showing when his takings claim accrued). Plaintiff points to no evidence and makes no allegation of fact in the complaint from which we could infer that the claim *did in fact accrue* after April 30, 1986. Rather, plaintiff devotes much energy to arguing that the claim did *not* accrue upon the enactment of the 1979 EAA. We now address plaintiff's arguments briefly below.

First, plaintiff suggests that the export ban worked "in conjunction with other factors" over time to effect the taking. Alaska has failed to clearly identify these "other factors" to the court, and we cannot divine what they may be. Indeed, a reading of the two counts of uncompensated takings alleged in the complaint belies the contention that anything other than the export ban contained in the 1979 EAA effected the taking thereby causing the claim to accrue. Therein plaintiff candidly identifies on numerous instances the sources of the takings to be that: "[a]s a result of the enforcement of the [1979] EAA, plaintiff has been deprived of . . . these property rights. . . ."; "[a]s a result of the enforcement of the [1979] EAA . . . plaintiff has suffered a substantial loss of revenues"; "[t]he enforcement of the [1979] EAA interferes with plaintiff's . . . reasonable expectation[s]. . . ."; "[t]he [1979] EAA restricted and continues to restrict demand and markets for some of Alaska's crude oil. . . ."; and, "[a]s a result of the enforcement of the [1979] EAA, plaintiff has been deprived of the full benefits of ownership. . . ." (Am.Complaint ¶¶ 47–49, 59, 60). Furthermore, in plaintiff's opposition brief, Alaska states that: "from 1979 to the present . . . the U.S. government enforced the total ban on the export of TAPS oil and severely or totally damaged the value of the State's

---

ent in ownership, among them the right to possess, use and dispose of it." *Althaus v. United States*, 7 Cl.Ct. 688, 693 (1985). It is with this last "stick" in the bundle of rights with which we are primarily concerned for the purposes of this discussion.

10. Section 7(d) of the 1979 EAA provides, in relevant part, as follows:

(1) . . . [N]o domestically produced crude oil transported by pipeline over [the TAPS] . . . may be exported from the United States. . . .

50 U.S.C.App. § 2406(d).

property"; and "[The 1979] EAA § 7(d) . . . creates the taking of Alaska's property interests" (Pl.Opp.Br. at 5, 9). Nothing could be clearer from the amended complaint and plaintiff's brief than that the alleged taking was brought about solely by the imposition by the United States of a ban on the export of TAPS oil as a result of the enactment of the 1979 EAA.

Alaska contends that it was impossible, in 1979, to determine the extent of the harm caused by the export ban. In effect, plaintiff argues that a claim does not accrue until the *extent* of the damages has become manifest. However, the statutory period begins to run when a claimant has suffered a compensable injury, not when he is finally able to calculate the precise quantum of his damages. *Jones v. United States,* 9 Cl.Ct. 292, 295 (1985) ("While plaintiffs could not be absolutely certain [of] . . . the extent of the damage[s] . . . this is of no moment. Plaintiffs invariably bring lawsuits without knowing for sure what, if anything, they will recover."). As the Supreme Court has stated in a similar context:

> It is not at all material to this cause of action, whether the full extent of damage was then ascertained or not ascertained. It was enough that there was a cause of action. From that moment the statute began to run. The law regards the time when the cause of action arises, not the time when the degree of injury, more or less, is made manifest. . . .

*Wilcox v. Executors of Plummer,* 29 U.S. (4 Pet.) 172, 177, 7 L.Ed. 821 (1830). While Alaska may not have been certain of the damage she had suffered as a result of the 1979 export ban, she certainly knew that the ban had an effect on her property. As counsel clearly admits in plaintiff's opposition brief, "[t]he State could predict that the export ban might harm it. . . ." (Pl.Opp.Br. at 26). Given such concession, Alaska was on notice that she had a viable cause of action on this record because all of the relevant facts which allegedly fix the liability of the government (*i.e.,* that the export ban diminished the value of state-owned oil) were known or knowable to her well before April 30, 1986.

In addition, plaintiff may also be heard to argue, more subtly, that her claim did not accrue in 1979 because she was not sure at that time whether the economic impact of the regulation was severe enough to constitute a taking. This is so because the Supreme Court has identified the "economic impact" of a regulation as a particularly significant factor in determining whether a regulatory taking has occurred. *Connolly v. Pension Benefit Guaranty Corp.,* 475 U.S. 211, 225, 106 S.Ct. 1018, 1026, 89 L.Ed.2d 166 (1986). Thus, reasons plaintiff, if the extent of the harm or economic impact was unclear in 1979, then the merits of her claim, that state-owned property was taken, were also unclear. Therefore, concludes plaintiff, the claim could not have accrued in 1979.

In connection with this line of argument, plaintiff attempts to liken this case to certain erosion and flooding cases where the courts have held that, when a taking is caused by a gradually encroaching physical invasion of real property, a claimant may wait until the situation has stabilized before bringing suit. *See, e.g., United States v. Dickinson,* 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947); *Applegate v. United States,* 25 F.3d 1579 (Fed.Cir.1994). Alaska claims, in this connection, that she was entitled to delay the filing of a claim for compensation because "the situation and damages had not stabilized" prior to April 30, 1986. However, we observe to the contrary that the export ban on TAPS oil has been completely stable since 1979. It has been in continuous effect and has not been substantively altered or modified, except that in 1988 the export ban provision, 50 U.S.C.App. § 2406(d), was amended to allow the export of some TAPS oil to Canada. Pub.L. No. 100–449 (1988). Furthermore, the facts at bar do not involve any gradual or physical encroachment of the kind involved in *Applegate,* 25 F.3d 1579 (Fed.Cir. 1994). Rather, the government action which allegedly effected the taking of Alaska's property occurred all at once, *i.e.,* upon the enactment of the 1979 EAA. There was nothing gradual about it. Accordingly, *Applegate* and other similar cases are totally inapposite to the matter currently before this court.

Moreover, the fundamental error in this argument about the uncertainty of the economic impact may be summarized as follows. There is a critical difference between knowing of a potential claim and being certain that one will prevail on the merits at trial. The former, and not the latter, is sufficient to start the running of the statute of limitations. A claim does not accrue at that point in time when a claimant achieves certainty about the outcome of his potential suit. Absolute certainty is an impossibility and is not required. Nor is the statute of limitations tolled while a claimant becomes certain he can prevail on the merits. Rather, a claim accrues as soon as all of the events have occurred which are necessary to fix the alleged liability of the government. In 1979, the current export ban on TAPS oil went into effect, and, as plaintiff admits, Alaska had notice that the ban would have a substantial adverse economic impact on the State. Consequently, plaintiff was then and there on actual notice that she had a potential claim or a viable cause of action. That resulting claim had accrued because the ban on the export of TAPS oil by virtue of section 7(d) of the 1979 EAA, 50 U.S.C.App. § 2406(d), had placed a restriction on plaintiff's property (*i.e.*, state-owned oil), making it less valuable. Whether or not the economic impact was sufficient to constitute a taking is a legal question to be resolved by a court, not a fact or event which had not yet occurred in 1979.

In sum, therefore, we are constrained to conclude that Alaska's claim first accrued in 1979, when Congress enacted the restriction on the export of TAPS oil in section 7(d) of the 1979 EAA. That was when the alleged taking occurred. At that time, all events had occurred which fixed the alleged liability of the United States, and plaintiff could have brought suit. Moreover, even if we were to accept plaintiff's contention that the claim did not accrue in 1979, Alaska has not demonstrated, as required, when her claim did in fact accrue. Accordingly, plaintiff has failed to meet her burden of showing, by a preponderance of the evidence, that her claim was timely filed and within our jurisdiction.

Next and finally, plaintiff also contends that new takings claims accrued, after the enactment of the 1979 EAA, each time the export ban was thereafter extended, either by executive order or congressional amendment. We address this contention below.

D. *Single or Multiple Taking(s)*

As originally enacted, the 1979 EAA ban on the export of TAPS oil was due to expire in 1983. Pub.L. No. 96–72, § 20, 93 Stat. 535 (September 29, 1979), *codified as amended at* 50 U.S.C.App. § 2419.[11] Since that time, the export ban provisions of that act have remained in effect through successive executive orders, issued pursuant to the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.*, and through congressional amendments of the act's expiration date.[12] Some of these extensions were promulgated after April 30, 1986 (*i.e.*, within the statutory period). Defendant maintains that plaintiff's entire claim accrued, if at all, singularly in 1979. If, on the other hand, as plaintiff argues, each extension caused a new and distinct claim to accrue, then any claim which accrued less than six years prior to the filing of this action (*i.e.*, after April 30, 1986) would not be barred under 28 U.S.C. § 2501. Because we find that the repeated extensions of export ban on TAPS oil did not cause separate claims to accrue, we hold that Alaska's claim accrued all at once *in 1979*.

Defendant relies on *De Anza Properties X, Ltd. v. Santa Cruz*, 936 F.2d 1084 (9th Cir. 1991), for its assertion that Alaska's claim accrued singularly in 1979. In *De Anza*, owners of mobile home parks brought a constitutional challenge to a county mobile home rent control ordinance in California. The county argued that the challenge was barred by the relevant statute of limitations because the claim had accrued upon the enactment of the ordinance in 1982. Under its original terms, the ordinance had been due to expire in 1987. However, "[t]he county subsequently reenacted the ordinance with a new sunset provision, and in August of 1987 the county

---

**11.** Section 20 of the 1979 EAA provided, as originally enacted, that: "The authority granted by this Act terminates on September 30, 1983."

**12.** *See* note 2, *supra*.

amended the ordinance to delete the sunset provision in its entirety." *Id.* at 1086. The mobile home park owners maintained, on that record, that their claim for a "permanent taking," accrued upon the 1987 amendment to the ordinance.

Rejecting this characterization, the Ninth Circuit held that the claim had accrued as a whole in 1982. Of the owners' argument that a separate claim accrued with the 1987 amendment, the court said:

> The flaw in this theory is that the provision of the ordinance which they challenge has remained exactly the same since 1982. The conduct of the county has thus remained exactly the same at all times material to this case, and the effect of the ordinance upon the plaintiffs has not altered. Appellants were experiencing substantially the same injury in 1982 that they experienced in 1987. They were on notice that their property interests would be affected by the ordinance at the time it was enacted. There is no basis for distinguishing between two [claims].

*Id.* Furthermore, the court held that, while a durational change in a provision may affect damages, it does not affect the accrual of a cause of action. *Id.* at 1086–87; *cf. Juda v. United States,* 6 Cl.Ct. 441, 450 (1984) ("Whether a taking is characterized as 'temporary' or 'permanent' ... is not conclusive on the issue of when a suit must be brought on a taking claim. Such characterization has bearing on the measure of damages."). Accordingly, the court concluded that "[t]he county's amendment in 1987 ... did not create an entirely new cause of action for purposes of the statute of limitations." *De Anza,* 936 F.2d at 1087.

Applying the rationale and holding of *De Anza,* we find that Alaska's claim for just compensation accrued in its entirety upon the enactment of the 1979 EAA. The restriction banning the export of TAPS oil has remained substantially the same since 1979.[13] Furthermore, plaintiff admits that the ban on the export of TAPS oil has been in continuous effect. Thus, at the time of the filing of the original complaint in 1992, plaintiff was experiencing the same injury as in 1979. The subsequent legislative and executive actions to which plaintiff refers affected only the duration of the export ban.[14] Therefore, the numerous extensions of the export restrictions did not cause new and distinct substantive claims to accrue. Rather, plaintiff was on notice that her property interest would be affected by the 1979 EAA at the time it was enacted. This conclusion is supported by the Federal Circuit's recent decision in *Creppel,* 41 F.3d 627.

In *Creppel,* plaintiffs alleged both a temporary taking stemming from an order issued by the U.S. Army Corps of Engineers and a permanent taking premised on an "EPA final determination," both of which partially cancelled a Corps of Engineers land reclamation project. 30 Fed.Cl. at 329. The Court of Federal Claims held that only a single taking had occurred because the initial order had already completely diminished the value of plaintiffs' land and, therefore, the subsequent EPA action could not have affected plaintiffs' property value. *Id.* at 331. Reversing in part, the Federal Circuit found that the claimants' property regained its value for at least four months between the two decisions as a result of a district court order directing the project to proceed. *Creppel,* at 328. Because the claimants regained their expectation of development during that time, the

---

**13.** While the ban has remained in effect since enacted, provisions governing the procedure for exceptions to the ban have been slightly amended. For instance, in 1985, Pub.L. No. 99–64, § 110(a)(3)(B) amended 50 U.S.C.App. § 2406(d), providing for exceptions to be enacted into law by Congress rather than to be passed by joint resolution approving the procedure. Additionally, in 1988, the export ban was amended to allow for some exports of TAPS oil to Canada. Pub.L. No. 100–449. Plaintiff fails to argue that these small changes had any effect on the injury she was suffering. Thus, we find that Alaska is

now suffering the same injury that she alleges she was suffering in 1979.

**14.** For example, Pub.L. No. 103–277, 108 Stat. 1407 (1994), provided:

> Be it enacted be the Senate and the House of Representatives of the United States of America in Congress assembled, That section 20 of the Export Administration Act of 1979 is amended by striking "June 30, 1994" and inserting "August 20, 1994".

court held that the subsequent EPA final determination halting the project did affect their property values and that, therefore, a new takings claim accrued at that time. *Id.*

At bar, the export ban on TAPS oil has been in continuous effect since 1979. At no time has the ban been lifted. Thus, assuming that the restriction on export reduced the value of Alaska's property, the lost property value has not been restored even temporarily. Alaska could not have regained a reasonable expectation of being able to export crude oil transported on the TAPS because the ban has been continuously in force since 1979. Therefore, if the government action at issue in this case (*i.e.,* the export ban) interfered with plaintiff's reasonable investment-backed expectations, it did so in 1979 but not thereafter. Without an interference with plaintiff's reasonable investment-backed expectations, no taking can occur. *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1005, 104 S.Ct. 2862, 2874, 81 L.Ed.2d 815 (1984); *Golden Pac. Bancorp v. United States,* 15 F.3d 1066, 1074 (Fed.Cir. 1994). Consequently, we find that the extensions of the oil export restrictions by amendment and by executive order did not cause new and separate substantive takings claims to accrue.

In order to draw the converse conclusion, we would have to hold that, prior to each extension of the ban, plaintiff possessed a reasonable investment-backed expectation that, upon the expiration date of the ban, Alaska would be free of the export restriction thereafter. Such a holding would be improper because, once a legislative scheme is in place, the mere buttressing of that scheme, for instance by extending its duration, cannot interfere with reasonable investment-backed expectations. *Connolly,* 475 U.S. at 227, 106 S.Ct. at 1018 ("Those who do business in a regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end."). Therefore, the several extensions of the export ban could not have interfered with plaintiff's reasonable investment-backed expecta-

tions and, thus, did not cause separate substantive takings claims to accrue.

From the foregoing, it necessarily follows that, because the TAPS oil export ban has remained the same, from a substantive posture, since 1979, with only its duration being affected by subsequent action, and because plaintiff never regained an expectation of being able to export TAPS oil, Alaska's claim accrued in 1979 as a whole. Thus, since the petition thereon was not filed until 1992, it was filed well after six years from the claim's accrual date. Accordingly, Alaska's claim is fully time-barred by the statute of limitations contained in 28 U.S.C. § 2501.

## CONCLUSION

For the above-stated reasons, we hold that 28 U.S.C. § 1500 does not deprive this court of jurisdiction over plaintiff's claim.[15] However, because plaintiff has failed to comply with the requirements of 28 U.S.C. § 2501 in that her claim was not timely filed, this court lacks subject matter jurisdiction over the complaint. Without jurisdiction, further consideration of plaintiff's Motion to Strike Defendant's Amended Motion to Dismiss or of defendant's motion to dismiss for failure to state a claim is, therefore, rendered moot. Defendant's motion to dismiss for lack of subject matter jurisdiction, pursuant to RCFC 12(b)(1), is hereby GRANTED, and the petition shall, therefore, be DISMISSED. The Clerk shall enter judgment accordingly. Costs awarded to the defendant against plaintiff.

IT IS SO ORDERED.

---

**15.** We reach this conclusion because plaintiff's two claims did not seek the same relief. *See*

*Loveladies,* 27 F.3d at 1551.