Monika M. KNOWLES, Plaintiff,

v.

UNITED STATES, Defendant.

No. 98–146C.

United States Court of Federal Claims.

April 28, 1999.

Kenneth M. Carpenter, Topeka, Kansas, attorney of record, for the plaintiff.

Sean C. Griffin, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., attorney of record, for the defendant. LCDR Steven L. Miller, Office of the Judge Advocate General, Department of the Navy, of counsel.

## OPINION

HORN, Judge.

The above-captioned case comes before the court on defendant's motion to dismiss pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC). The plaintiff filed this complaint against the United States requesting to be retroactively placed on the Permanent Disabled Retirement List (PDRL) and paid all past disability benefits, together with any other benefits, interest or monies to which

she may be entitled to the date of her discharge from the Navy on April 26, 1979.

The defendant argues that more than six years have elapsed since the accrual of the plaintiff's claim, and, thus, the claim is barred by the statute of limitations set forth in 28 U.S.C. § 2501 (1994). For the reasons discussed more fully below, defendant's motion to dismiss is **GRANTED**.

## FACTS

The plaintiff, Monika Knowles, served on active duty in the United States Navy from 1971 to 1979. In December of 1978, a medical board found Ms. Knowles to be suffering from a gastrointestinal disorder known as Crohn's disease,[1] among other ailments. The approximate onset of the illness occurred in 1971, while the plaintiff was on active duty. The medical board determined that the plaintiff's condition disqualified her from worldwide duty. On December 26, 1978, the medical board forwarded Ms. Knowles' record to the Central Physical Evaluation Board (PEB) to determine her fitness for continued active naval service.[2]

On January 12, 1979, the Central PEB found the plaintiff unfit for duty because of physical disability due to her Crohn's disease. The plaintiff was rated at twenty percent disabled, ten percent of which was found due to the Crohn's disease, and ten percent due to an unrelated ailment.

On January 25, 1979, the plaintiff, represented by counsel, appealed her "unfit for duty" designation to the Regional PEB. On March 13, 1979, the Regional PEB reversed the decision of the Central PEB and found the plaintiff fit for duty.

Shortly after her successful appeal to the Regional PEB, which reinstated her to fit for duty status, the plaintiff filed another appeal, to the Physical Review Council, this time, to contest the finding that she was fit for duty. As part of her appeal, plaintiff provided statements from two doctors who asserted that her Crohn's disease was getting worse and required close medical observation, treatment, and hospitalization. On March 29, 1979, the Physical Review Council ruled that the plaintiff was unfit for duty by reason of moderately severe Crohn's disease, in addition to other ailments, for a total disability rating of forty percent. Based on its findings, the Physical Review Council recommended that the plaintiff be placed on the TDRL. As requested, the plaintiff was placed on the TDRL, with temporary retirement pay, on April 26, 1979.

On April 9, 1981, the plaintiff underwent her first required TDRL, physical examination. The examining doctor concluded that, although she had done reasonably well since her placement on the TDRL, she should be permanently retired because, in his opinion, "the prognosis for recovery from Crohn's disease [was] zero." Although the plaintiff was stable at the time of the examination, the doctor stated that "a return to active duty would only tend to exacerbate this patient's problem."

1. According to the joint statement of facts submitted by the parties, Crohn's disease is a chronic inflammatory disorder that can affect the gastrointestinal tract. It may cause pain, fever, loss of weight, and ulcers. Asymptomatic periods may be interrupted with disease activity at any time. A cure for the disease does not exist currently.

2. As stipulated to by the parties, the Secretary of the Navy (Secretary) has the power to determine whether a member is unfit to perform the duties of her office due to a physical disability. The Secretary may also retire a service member, with retirement pay, on a medical basis if the secretary determines that the member is at least thirty percent disabled, as judged by the Department of Veteran's Affairs schedule of disability ratings. *See 10 U.S.C. § 1201 (1994).* Alternatively, if the Secretary finds that the disability is likely to be permanent, but has not yet so been determined, the Secretary must place the member on the Temporary Disability Retired List (TDRL), with temporary entitlement to retirement pay. *See* 10 U.S.C. § 1205 (1994). While a member is on the TDRL, he or she must submit to periodic physical examinations to determine if there has been a change in their disability. *See 10 U.S.C. § 1210(a) (1994).* If such an examination shows that the member's disability is permanent, stable, and less than thirty percent disabling, and if the member has served fewer than twenty years, the Secretary must remove the member's name from the TDRL, and the member may be separated with severance pay. *See* 10 U.S.C. § 1210(e) (1994). The power to act on disability determinations has been delegated by the Secretary to the PEB.

As a result of the examination, on May 22, 1981, the Central PEB held another hearing to review the plaintiff's record. The Central PEB found the plaintiff to be permanently disabled, with a ten percent disability rating due to her Crohn's disease. Because the plaintiff's disability was rated below thirty percent, the Central PEB ruled that she should be separated from the service with severance pay. The plaintiff was notified, by letter, of its decision on June 2, 1981. The letter from the Central PEB informed the plaintiff that the case would be "finalized" if she concurred in the decision, or, if she wished not to concur, she could submit a written rebuttal or demand a formal hearing to challenge the decision. At the bottom of the letter was a form for the plaintiff to sign that gave her three options: (1) request a reconsideration from the Central PEB based on additional medical submissions; (2) demand a formal consideration of the Navy's determination; or (3) accept the Central PEB's decision to terminate her service from the Navy. Included in the letter was a fact sheet to assist the plaintiff in making her decision.

On June 10, 1981, the plaintiff accepted, and, thus, finalized, the Central PEB's decision. Consequently, on July 8, 1981, the plaintiff received an honorable discharge from the Navy, with severance pay.

On March 5, 1997, the plaintiff applied to the Board for Correction of Naval Records (BCNR) for a correction of her military records. She argued that she should have been placed on the PDRL and medically retired in April of 1981. Plaintiff contended that the Navy violated her rights by removing her from the TDRL three years prematurely. On December 1, 1997, the BCNR denied this request based upon her application to the BCNR and her naval records.

The above-captioned action in the Court of Federal Claims was filed by the plaintiff on March 2, 1998, requesting that this court reverse the BCNR's decision. The plaintiff requests that the decision of the defendant to deny plaintiff a medical discharge and retirement be reversed as arbitrary and capricious and that the Navy should place the plaintiff, retroactively, on the PDRL to the date of her discharge from active duty. The plaintiff further requests that the Navy be ordered to pay all past disability benefits, together with any other benefits, interest or monies to which she may be entitled.

## DISCUSSION

The defendant has filed a motion to dismiss pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction. When considering a motion to dismiss, the court may consider all relevant evidence in order to resolve any disputes as to the truth of the jurisdictional facts alleged in the complaint. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988). The court is required to decide any disputed facts which are relevant to the issue of jurisdiction. *Id.*

The standard for weighing the evidence presented by the parties when evaluating a motion to dismiss has been articulated by the United States Supreme Court, as follows: "in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *accord Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989); *see also Alaska v. United States*, 32 Fed.Cl. 689, 695 (1995), *appeal dismissed*, 86 F.3d 1178 (Fed.Cir.1996). In rendering a decision, the court must presume that the undisputed factual allegations included in the complaint by a plaintiff are true. *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d at 746; *Alaska v. United States*, 32 Fed.Cl. at 695.

The burden of establishing jurisdiction is on the plaintiff. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Alaska v. United States*, 32 Fed.Cl. at 695; *Catellus Dev. Corp. v. United States*, 31 Fed.Cl. 399, 404 (1994). The court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355

U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). Nonetheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

The six-year statute of limitations, 28 U.S.C. § 2501 (1994), governs claims brought before this court. The statute of limitations time limit "is jurisdictional in nature and, as an express limitation on the waiver of sovereign immunity, may not be waived." *Hart v. United States*, 910 F.2d 815, 818–19 (Fed.Cir.1990); *see also Colon v. United States*, 35 Fed.Cl. 515, 517 (1996). Moreover, the court must strictly construe the statute of limitations to avoid prejudice to the government resulting from the assertion of stale claims. *See Colon v. United States*, 35 Fed.Cl. at 517.

It is well settled that in military disability retirement cases, a claim accrues when the final decision of the appropriate board is made. *See Real v. United States*, 906 F.2d 1557, 1560 (Fed.Cir.1990) ("The decision by the first statutorily authorized board which hears or refuses to hear the claim is the triggering event."); *Friedman v. United States*, 159 Ct.Cl. 1, 24, 310 F.2d 381 (1962), *cert. denied, sub nom., Lipp v. United States*, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963); *Colon v. United States*, 35 Fed.Cl. at 518.[3] The PEB is considered to be "a proper and competent tribunal." *Fuller v. United States*, 14 Cl.Ct. at 544. "Once triggered, the statute of limitations is not tolled by resort to optional administrative remedies, such as an appeal to a military records corrections board." *Colon v. United States*, 35 Fed.Cl. at 518 (citing *Hurick v. Lehman*, 782 F.2d 984, 987 (Fed.Cir.1986));

*see also Real v. United States*, 906 F.2d at 1560; *Friedman v. United States*, 159 Ct.Cl. at 25, 310 F.2d 381. In the instant action, plaintiff's claim began to accrue no later than June 10, 1981, the date that the plaintiff formally accepted the board's decision. The plaintiff filed this action on March 2, 1998, which is well beyond the six-year statute of limitations. Accordingly, pursuant to 28 U.S.C. § 2501, this court lacks jurisdiction to review plaintiff's claim.

Plaintiff's counsel argues, however, that based on the decision in *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corporation of California*, 522 U.S. 192, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997), since Ms. Knowles failed to receive installment payments rightfully due to her, the statute of limitations has not expired for payments missed in the last six years. In *Bay Area*, the defendant withdrew from an underfunded, multiemployer, pension plan. *See id.* Under the Multiemployer Pension Plan Amendment Act of 1980 (MPPAA), 29 U.S.C. §§ 1381–1461 (1994), employers who withdraw from a pension plan that falls within the act must pay "withdrawal liability." The MPPAA directs the plan's trustees to set an installment schedule and demand payment from the employer. *See* 29 U.S.C. § 1399. If payment is not made, the plan may sue to collect payment. *See* 29 U.S.C. § 1451(a)(1). In *Bay Area*, the defendant never made payments to cover their withdrawal liability, and a suit was brought against them by the plan's trustees. *See* 522 U.S. at 192, 118 S.Ct. 542.

The issue in *Bay Area* was "[w]hen does the MPPAA's six-year statute of limitations begin to run on a pension fund's action to collect unpaid withdrawal liability?" *Id.* at 195, 118 S.Ct. 542. In resolving this question, the United States Supreme Court ap-

---

**3.** In *Fuller v. United States*, 14 Cl.Ct. 542 (1988), the trial judge offered a second, later option for when to begin the running of the statute of limitations, namely, when the board's decision is accepted by the applicant. The judge in *Fuller* concluded "plaintiff's claim therefore accrued when he signed the waiver ... and refused the opportunity to appear before the PEB." *Fuller v. United States*, 14 Cl.Ct. at 545. Apparently adopting the *Fuller* approach, in its motion to dismiss in the above-captioned case, the defendant chose as the start for the running of the

statute of limitations "when the PEB rendered its decision *and* Ms. Knowles chose to finalize the decision by accepting it." (emphasis added). In the instant case, however, a choice between which of the two dates (the board decision date or when the applicant accepts the decision), should be used to start the running of the statute of limitations is of no significance to Ms. Knowles' ability to succeed. In plaintiff's case, both dates fall well beyond the applicable six-year statute of limitations.

plied the "standard rule that the limitations period commences when the plaintiff has 'a complete and present cause of action.'" *Id.* at 201, 118 S.Ct. 542 (quoting *Rawlings v. Ray*, 312 U.S. 96, 98, 61 S.Ct. 473, 85 L.Ed. 605 (1941)). In *Bay Area* the Supreme Court held that a cause of action was not created until the employer missed an installment payment due on their withdrawal liability. *See id.* at 202, 118 S.Ct. 542. The basis for the Supreme Court ruling was that the plan would not have a complete cause of action unless two conditions occurred. First, the trustees of the plan must calculate the amount owed, set a schedule of installment payments, and demand payment pursuant to 29 U.S.C. § 1399(b)(1). Second, the employer must default on an installment payment due. Therefore, since failure to make payment was an element of the trustee's claim, a "complete and present cause of action" was not created until the first payment was delinquent. *See id.* The Supreme Court also ruled that each missed payment created a new cause of action and carried its own statute of limitations. *See id.* at 208, 118 S.Ct. 542. More specifically, the Supreme Court stated:

> The [MPPAA] ... establishes an installment obligation. Just as a pension plan cannot sue to recover *any* withdrawal liability until the employer misses a scheduled payment, so too must the plan generally wait until the employer misses a particular payment before suing to collect *that payment.* As we have explained, a statute of limitations ordinarily does not begin to run until the plaintiff could sue to enforce the obligation at issue. We therefore agree with the Third Circuit that "a new cause of action," carrying its own limitations period, "arises from the date each payment is missed."

*Id.* (quoting *Board of Trustees of the Dist. No. 15 Machinists' Pension Fund v. Kahle Eng'g Corp.*, 43 F.3d 852, 857 (3d Cir.1994)) (emphasis in original).

The plaintiff argues that the *Bay Area* decision stands for the proposition that each missed retirement payment by the Navy constitutes a new cause of action and that although Ms. Knowles "may not be able to sue for all the payments owed to her, under *Bay Area*, the statute of limitations has not expired for any payments missed within the last six years." The *Bay Area* decision, however, does not assist plaintiff. The Court in *Bay Area* applied the "standard rule" that the statute of limitations period commences when there is a complete and present cause of action. *See id.* at 201, 118 S.Ct. 542. Applying the standard rule to the instant case, the plaintiff's cause of action became "complete and present," using the Supreme Court language in *Bay Area*, when she received the Central PEB determination refusing to place her on the PDRL, or at the latest when she accepted the decision. *Id.* The plaintiff could have filed suit in this court as long as it was filed within the six-year statute of limitations. Failure by the government to make a payment pursuant to placement on the PDRL is not an element of a suit challenging a PEB's decision, and, therefore, each missed payment does not constitute a new cause of action. As a result, the instant suit is barred by the statute of limitations.

## CONCLUSION

After careful consideration of the arguments and record submitted by the parties, the defendant's motion to dismiss is **GRANTED**, and the plaintiff's complaint is dismissed with prejudice.

**IT IS SO ORDERED.**