**SYNERNET CORPORATION, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 96–720C.

United States Court of Federal Claims.

July 29, 1998.

John G. Warner, Corte Madera, California, attorney of record for plaintiff.

Sean H. Lane, Deborah Y. Ho, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, with whom was Frank W. Hunger, Assistant Attorney General, attorneys of record for defendant. Alexander Barna, Office of Chief Counsel, National Aeronautics and Space Administration, Constance Kobayashi, Legal Division, Small Business Administration, of counsel.

## OPINION

HORN, Judge.

This case comes before the court on the defendant's motion to dismiss pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC) for lack of jurisdiction over the subject matter. In 1984, Synernet Corporation (Synernet) acquired certain assets from a company called Technology Development of California (TDC), including two contracts with the National Aeronautics and Space Administration (NASA). The first contract, NAS4–2938 (the Dryden contract), required the contractor to provide engineering services, while the second contract, NAS2–11835 (the Crow's Landing I contract), required the contractor to provide flight data support services. In February 1985, the plaintiff applied to the Small Business Administration (SBA) for certifica-

tion as a Section 8(a) small and disadvantaged business.[1] The SBA approved the plaintiff's Stage One Section 8(a) application and the plaintiff proceeded to perform both the Dryden contract and the Crow's Landing I contract. In February 1986, the SBA denied the plaintiff's application for Section 8(a) certification because of the plaintiff's alleged lack of financial and technical strength and its alleged lack of engineering expertise. After an appeal by the plaintiff, however, the SBA awarded the plaintiff the requested Section 8(a) certification. According to the complaint, "[a]t approximately the same time in 1986 that the plaintiff was awarded a Section 8(a) certification, NASA assigned the Dryden Contract to another contractor...." The plaintiff alleges that NASA's decision "had a severe adverse economic impact upon plaintiff because the Dryden contract constituted approximately 70% of plaintiff's business activity."

In its complaint, the plaintiff alleges that the defendant arbitrarily and capriciously administered and "terminated" the plaintiff's contracts in violation of the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706 (1994). The plaintiff also alleges that the defendant violated the Contract Disputes Act (CDA), 41 U.S.C. §§ 601–613 (1994 & Supp. II 1996), "by failing to modify plaintiff's contracts with NASA so that the plaintiff could earn a fair profit in performing under NASA's contracts and other government sponsored set aside programs."

## FACTS

The plaintiff, Synernet Corporation, was established in 1984 and is a corporation organized under the laws of California that provides "professional engineering services fo-

cused on computer hardware and software." In 1984, Synernet acquired certain assets from TDC, including two contracts with NASA. According to the plaintiff's complaint filed with the NASA Board of Contract Appeals, the two contracts were "novated to Synernet on December 31, 1984. The novation was approved by the Government on June 28, 1985."

The Dryden contract was a level-of-effort contract which "required the contractor to provide engineering services on a fixed price labor hour basis." Under the Dryden contract, the plaintiff was "to provide operational engineering for the Aeronautical Test Range." TDC had commenced performance on the Dryden contract on February 1, 1982. Synernet took over the performance of the Dryden contract on January 2, 1985 and continued performance until March 6, 1987. The contract was extended by thirteen separate contract modifications.

The Crow's Landing I contract "required the contractor to provide flight data support services on a cost-plus-fixed-fee basis for the Crow's Landing Naval Air, Station located in Crow's Landing, California." The Crow's Landing I contract was awarded to TDC effective March 1, 1984. After exercise of an option period and an extension to the contract, performance was to be completed on November 30, 1985.[2]

On February 11, 1985, the plaintiff submitted a Stage One application to the SBA for certification as a Section 8(a) disadvantaged business. In its Stage One application, the plaintiff identified the Dryden contract, the Crow's Landing I contract and "other anticipated government contract work to be performed by plaintiff" as requiring Section 8(a)

---

1. The original Small Business Act of 1953, Pub.L. No. 53–163, Title II, 67 Stat. 232 (1953), did not contain a "Section 8(a)." However, section 207(c) and section 207(d) empowered the SBA to enter into contracts with government agencies and to subcontract to small business concerns, 67 Stat. at 236. An amendment to the Small Business Act added Section 8(a) and provided, again, that the SBA could enter into contracts with government agencies and subcontract to small business concerns. Pub.L. No. 85–536, § 2 [8(a)(1), (2)], 72 Stat. 384, 389 (1958). In 1978, Section 8(a)(1)(C) was amended to include language, for the first time, which provided that

the SBA could subcontract with "socially and economically disadvantaged small business concerns," Pub.L. No. 95–507, Title II, § 202(a), 92 Stat. 1760, 1761 (1978). The current version of "Section 8(a)" is codified at 15 U.S.C. § 1637(a)(1)(B) (1994).

2. Later, on January 31, 1986, Synernet was awarded a contract, NAS2–12333 (the Crow's Landing II contract), which was to be performed in conjunction with the Crow's Landing I contract.

certification. The plaintiff states that "NASA Dryden was contacted by the SBA and agreed to support Synernet with 8(a) set aside work." The SBA approved the plaintiff's Stage One Section 8(a) application and the plaintiff alleges that, thereafter, it satisfactorily performed both the Dryden contract and the Crow's Landing I contract. Synernet submitted a Stage Two Section 8(a) application to the SBA on March 12, 1985. Synernet's business plan included continued performance of the Dryden contract under a Section 8(a) set aside. In June 1985, the SBA's San Francisco District Office approved Synernet's Stage Two application and it was forwarded to the SBA's San Francisco Regional Office for further review and action. In February 1986, after the plaintiff had applied for other NASA contracts on the basis of its Section 8(a) certification, the SBA informed the plaintiff that its application for Section 8(a) certification was denied because of the plaintiff's alleged lack of financial and technical strength and the alleged lack of engineering expertise on the part of Synernet's president and owner. In June 1986, however, the plaintiff received Section 8(a) certification after successfully appealing the SBA's decision to deny it Section 8(a) certification.

The plaintiff states that "[a]t approximately the same time in 1986 that plaintiff was awarded a Section 8(a) certification, NASA assigned the Dryden Contract to another contractor, the Woodside Summit Group." The plaintiff also alleges in its complaint that its contracts with the defendant were "terminated" by the defendant. The defendant states that "[i]n or around June 1986, because the Dryden contract had expired and NASA wished to renew the contract, NASA awarded the contract to the Woodside Summit Group." The plaintiff claims that NASA's decision to award the Dryden contract to the Woodside Summit Group (WSG) "had a severe adverse economic impact upon plaintiff because the Dryden contract constituted approximately 70% of plaintiff's business activity" and that the "plaintiff had agreed to accept new NASA contracts on terms which assumed that plaintiff would continue to receive the overhead and profit benefits of the Dryden contract." The plaintiff alleges that NASA's decision to award the Dryden contract to WSG:

was based upon false information received by NASA from the SBA that plaintiff lacked financial and technical strength and lacked engineering expertise, and was also based upon the SBA's recommendation that the Dryden contract be negotiated with the Woodside Summit Group. Prior to NASA's contract with Woodside Summit Group, plaintiff informed NASA that plaintiff's loss of the Dryden contract would cause plaintiff severe economic hardship. At the same time, the SBA informed plaintiff, falsely, the reason plaintiff was no longer receiving NASA contract work was because NASA had established unrealistic deadlines for the SBA to award Section 8(a) certification in favor of plaintiff.

Synernet states that, "[p]rior to plaintiff's entering into new NASA contracts," NASA did not advise Synernet that the Dryden contract would be transferred to another contractor. The plaintiff further asserts that after the Dryden contract was awarded to WSG, the plaintiff attempted to modify its other contracts with NASA, including the Crow's Landing I contract and the Crow's Landing II contract, to offset any profit loss suffered by the plaintiff after the award of the Dryden contract to WSG. In its complaint, the plaintiff states that it:

attempted to renegotiate the terms of the new NASA contracts in order to increase plaintiff's overhead allowances so that plaintiff could achieve profitability on those new contracts, [but] NASA refused to do so, with the result that plaintiff sustained substantial overhead costs in the new NASA contracts which were not offset by the Dryden contract work.

Synernet filed a claim with the contracting officer under the CDA on June 6, 1988 that requested a modification of the Crow's Landing I contract for overhead allowances. On August 8, 1988, Synernet filed a claim with the contracting officer under the CDA that requested reformation of the Crow's Landing II contract to eliminate indirect cost ceilings. The contracting officer issued a final decision on February 2, 1989 that denied Synernet's

August 8, 1988 request for reformation of the Crow's Landing II contract. Synernet filed a notice of appeal from the contracting officer's February 2, 1989 final decision on the Crow's Landing II contract on February 13, 1989 with the NASA Board of Contract Appeals, which was docketed as NASA BCA No. 289-1. The contracting officer then issued a final decision on March 14, 1989 that denied Synernet's June 6, 1988 claim for the modification of the Crow's Landing I contract. Synernet filed an appeal on May 1, 1989 from the contracting officer's March 14, 1989 final decision on the Crow's Landing I contract with the NASA Board of Contract Appeals, which was docketed as NASA BCA No. 589-6. The plaintiff filed complaints with the NASA Board of Contract Appeals in both NASA BCA No. 289-1 and NASA BCA No. 589-6, which NASA answered. The. parties then began pre-trial discovery and filed briefs with the board. On September 14, 1989, NASA filed a motion for summary judgment in NASA BCA No. 289-1 with the NASA Board of Contract Appeals, to which Synernet responded on September 14, 1990. The NASA Board of Contract Appeals denied NASA's motion for summary judgment in NASA BCA No. 289-1 on September 21, 1990. On November 19, 1990, Synernet voluntarily withdrew both NASA BCA No. 289-1 and NASA BCA No. 589-6, with prejudice, stating that it had decided to pursue a request for extraordinary relief under Public Law 85-804.[3]

The plaintiff alleges that it withdrew its appeals before the NASA Board of Contract Appeals because:

> Shortly after the NASA Board of Contract Appeals denied NASA's motion for summary judgment, a senior counsel for NASA, Pierre Hartman, contacted Synernet's attorney and urged Synernet to drop its pending case before the NASA Board of Contract Appeals. Mr. Hartman promised Synernet that if it dropped its case and presented its claims in the form of a request for extraordinary relief under Public Law 85-804, Synernet would receive favorable consideration from NASA because, according to Mr. Hartman, Synernet had presented substantial evidence showing that it was entitled to monetary compensation or contract adjustment which would lead to monetary compensation.

Synernet then filed a request for extraordinary relief and contract adjustment under Public Law 85-804 with the NASA Contract Adjustment Board. The NASA Contract Adjustment Board denied Synernet's request for extraordinary relief on March 29, 1992. After the NASA Contract Adjustment Board denied Synernet's request for extraordinary relief, "Synernet and its president, Vivien J. Cole, corresponded with members of Congress and others to obtain the contract adjustment relief it was seeking."

On August 14, 1992, Ms. Cole, on behalf of Synernet, wrote a letter to NASA's Administrator, Daniel S. Goldin. On March 16, 1994, Ms. Cole again contacted Mr. Goldin by letter, which the plaintiff has called a "formal request." Mr. Goldin responded to Ms. Cole's March 16, 1994 letter on January 26, 1995 in a letter which stated in relevant part:

> In my letter of September 20, 1994, I advised you that a panel had been chartered to review the allegations you raised in your letter to me of March 16, 1994.
>
> I have reviewed the results of that effort as well as other matters relating to your company's experiences with contracts with NASA's Ames Research Center and have concluded that NASA has no basis to grant any relief to your company.

On January 25, 1996, Synernet sued NASA and the SBA in the United States District Court for the Northern District of California, Case No. C-96 00364, alleging claims under the APA, the CDA, the Equal Protection Clause of the United States Constitution and the Civil Rights Acts codified in 42 U.S.C.

---

3. Public Law 85-804 states:

That the President may authorize any department or agency of the Government which exercises functions in connection with the national defense ... to enter into contracts or into amendments or modifications of contracts heretofore or hereafter made and to make advance payments thereon ... whenever he deems that such action would facilitate the national defense.

Pub.L. 85-804, § 1, 72 Stat. 972 (1958).

§ 1981 and 42 U.S.C. § 2000d. The United States responded to the plaintiff's January 25, 1996 complaint with a motion for judgment on the pleadings on June 12, 1996. The United States District Court for the Northern District of California granted the United States' motion for judgment on the pleadings on August 15, 1996. The judge wrote that "the Court finds that plaintiff is attempting to avoid the jurisdictional bar of the Contract Disputes Act, 41 U.S.C. §§ 601 et seq., by merely alleging an APA cause of action. The essence of plaintiff's claim is contractual, and therefore this Court lacks jurisdiction under the CDA." The judge wrote that "plaintiff's APA claim against NASA is DISMISSED WITHOUT PREJUDICE to plaintiff filing it in either the United States Court of Appeals for the Federal Circuit, 41 U.S.C. § 607(g)(1), or the United States Court of Federal Claims. 41 U.S.C. § 609(a)(1)." The judge dismissed the plaintiff's APA cause of action against the SBA with prejudice after he determined that the claim was barred by the statute of limitations and that the SBA was not a party to any contract with Synernet. The judge also wrote that "because this Court lacks jurisdiction over plaintiff's CDA cause of action against NASA, it is DISMISSED WITHOUT PREJUDICE to plaintiff filing it in either the United States Court of Appeals for the Federal Circuit, 41 U.S.C. § 607(g)(1), or the United States Court of Federal Claims. 41 U.S.C. § 609(a)(1)." However, the District Court dismissed Synernet's CDA claim against the SBA with prejudice after finding that the SBA was not a party to any contract with Synernet. Finally, the District Court dismissed Synernet's discrimination claims without prejudice for failure to state a claim upon which relief could be granted.

The plaintiff filed a complaint in this court on November 12, 1996. The court notes that Synernet's suit in the United States District Court for the Northern District of California was based on the same contracts that are at issue in the case at bar and also alleged claims pursuant to the APA and the CDA. In the instant case, the plaintiff only brings claims against NASA because the District Court dismissed the plaintiff's claims against the SBA with prejudice. The complaint in

this court alleges that "[i]n administering and terminating the contracts which plaintiff entered into or assumed with NASA, defendant acted arbitrarily and capriciously and contrary to law in violation of the Administration [sic] Procedures [sic] Act." The plaintiff further alleges that "[d]efendants violated the Contract Disputes Act (41 U.S.Code §§ 601–613) by failing to modify plaintiff's contracts with NASA so that plaintiff could earn a fair profit in performing under NASA's contracts and other government sponsored set aside programs." The plaintiff requests the following relief:

a. Monetary damages in excess of $100,-000, according to proof.

b. Administrative or injunctive relief as may be available under applicable statutes or regulations applicable to the facts of this case.

c. Such other and further relief as the court deems proper.

## DISCUSSION

When considering a motion to dismiss, the court may consider all relevant evidence in order to resolve any disputes as to the truth of the jurisdictional facts alleged in the complaint. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988). The court is required to decide any disputed facts which are relevant to the issue of jurisdiction. *Id.*

The standard for weighing the evidence presented by the parties when evaluating a motion to dismiss for lack of jurisdiction, pursuant to RCFC 12(b)(1), and/or a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(4), has been articulated by the United States Supreme Court, as follows: "in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *accord Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989); *see also Alaska v. United States*, 32 Fed.Cl. 689, 695 (1995), *appeal*

*dismissed,* 86 F.3d 1178 (Fed.Cir.1996). In rendering a decision, the court must presume that the undisputed factual allegations included in the complaint by a plaintiff are true. *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d at 746; *Alaska v. United States,* 32 Fed.Cl. at 695.

The burden of establishing jurisdiction is on the plaintiff. *McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Alaska v. United States,* 32 Fed.Cl. at 695; *Catellus Dev. Corp. v. United States,* 31 Fed.Cl. 399, 404 (1994). The court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). Nonetheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

■ In order for this court to have jurisdiction over the plaintiff's complaint, the Tucker Act, 28 U.S.C. § 1491 (1994), as amended 28 U.S.C.A. § 1491 (West Supp. 1998), requires that a substantive right, which is enforceable against the United States for money damages, must exist independent of 28 U.S.C. § 1491. The Tucker Act provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Tucker Act merely confers jurisdiction on the United States Court of Federal Claims; it does not create a substantive right that is enforceable against the United States for money damages. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607, *reh'g denied,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980) (*Mitchell I* ); *United States v. Testan,* 424 U.S. 392, 398–99, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. Connolly,* 716 F.2d 882, 885 (Fed. Cir.1983) (*en banc* ), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).

■ Moreover, a waiver of the traditional sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969) (citing *United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). The individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Testan,* 424 U.S. at 398, 96 S.Ct. 948. "[I]n order for a claim against the United States founded on statute or regulation to be successful, the provisions relied upon must contain language which could fairly be interpreted as mandating recovery of compensation from the government." *Cummings v. United States,* 17 Cl.Ct. 475, 479 (1989), *aff'd,* 904 F.2d 45 (Fed.Cir.1990) (citations omitted); *see also United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (*Mitchell II* ) (citing *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. 948 (quoting *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967))); *Duncan v. United States,* 229 Ct.Cl. 120, 138, 667 F.2d 36, 47 (1981), *cert. denied,* 463 U.S. 1228, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983).

■ The first count of the plaintiff's complaint alleges that "[i]n administering and terminating the contracts which plaintiff entered into or assumed with NASA, the defendant acted arbitrarily and capriciously and contrary to law in violation of the Administration Procedures Act." Although the United States District Court for the Northern District of California dismissed the plaintiff's APA claim against NASA without prejudice and suggested that the plaintiff had an option to file the claim in either the United States Court of Appeals for the Federal Circuit or the United States Court of Federal Claims, the plaintiff's APA claim in this court is jurisdictionally defective.

The APA was not conceived of in jurisdictional terms. *Califano v. Sanders,* 430 U.S. 99, 106, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). "We thus conclude that the APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action." *Id.* at 107, 97 S.Ct. 980. "The Administrative Procedure Act does not establish jurisdiction in this court over claims for money." *Union Bank and Trust Co. v. United States,* 27 Fed.Cl. 403, 404 (1992), *aff'd,* 6 F.3d 788 (Fed.Cir.1993) (citing *Berry v. United States,* 27 Fed.Cl. 96, 102–03 (1992)). The jurisdiction of the United States Court of Federal Claims pursuant to the Tucker Act, 28 U.S.C. § 1491, has been described as follows:

> Under Section 1491 what one must always ask is whether the constitutional clause or the legislation which the claimant cites can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained. If not, this court cannot give relief under Section 1491, although some separate general principle—arising, for example, from tort law—might lead to a remedy in another forum or under some special relief provision.

*Eastport Steamship Corp. v. United States,* 178 Ct.Cl. at 607, 372 F.2d at 1009. As noted above, "[t]he Tucker Act, of course, is itself only a jurisdictional statute, it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan,* 424 U.S. at 398, 96 S.Ct. 948. The Tucker Act provides for jurisdiction in the United States Court of Federal Claims when such a substantive right exists. *Id.* (citing *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. at 605–07, 372 F.2d at 1007–09). Synernet's reliance upon the APA as a basis for jurisdiction in this court is misplaced because the APA does not mandate the payment of money damages by the United States to a prevailing plaintiff. *See e.g., Crocker v. United States,* 37 Fed.Cl. 191, 197, *aff'd,* 125 F.3d 1475 (Fed.Cir.1997), *Allred v. United States,* 33 Fed.Cl. 349, 350–51 (1995), *appeal dismissed,* 78 F.3d 602

(Fed.Cir.1996), *Heagy v. United States,* 12 Cl.Ct. 694, 697–98 (1987), *aff'd,* 848 F.2d 1244 (Fed.Cir.1988). Thus, this court finds that it lacks subject matter jurisdiction to hear the merits of the plaintiff's APA claim because the APA does not provide for monetary relief.

The plaintiff even concedes that "[i]t may be true that standing alone, without any further grant of jurisdiction, the Court of Federal Claims does not have jurisdiction to hear an APA claim." However, the plaintiff states that the court may consider an APA claim when it is brought in combination with a CDA claim. The plaintiff, however, is incorrect because for jurisdiction to exist in this court, each basis for jurisdiction that is alleged by the claimant must independently provide for monetary relief to be paid by the United States to a prevailing plaintiff. *See National Corn Growers Ass'n v. Baker,* 840 F.2d 1547, 1559 (Fed.Cir.1988)(stating that "no separate and distinct authority exists in the APA to grant courts jurisdiction."); *Crocker v. United States,* 37 Fed.Cl. at 197 (stating that the court did not have jurisdiction under the Tucker Act to review an APA claim because "the APA is not an independent basis for this or any other court to exercise jurisdiction over claims for money."); *Heagy v. United States,* 12 Cl.Ct. at 698 (holding that because "the APA is not an independent source of jurisdiction for any court ... the review standard created by the APA is simply not applicable in the Claims Court."). Because the APA does not on its own vest this court with subject matter jurisdiction, the court may not assert jurisdiction to determine Synernet's APA claim, despite the fact that Synernet's APA claim was brought at the same time as its CDA claim, over which the court has jurisdiction under the Tucker Act.[4]

The plaintiff also alleges that the defendant is estopped from contending that this court does not have jurisdiction over APA claims because "the Government moved for judgment on the pleadings on the ground

---

4. In this regard, the court notes the California District Court's comment in its order that granted the defendant's motion for judgment on the pleadings that "plaintiff is attempting to avoid the jurisdictional bar of the Contract Disputes Act, 41 U.S.C. §§ 601 et seq., by merely alleging an APA cause of action."

that the Court of Federal Claims, not the district court, had jurisdiction to consider Synernet's APA claim." Furthermore, the plaintiff believes that this court has jurisdiction over the plaintiff's APA claim because the District Court dismissed the plaintiff's APA claim without prejudice to allow the claim to be filed in the United States Court of Appeals for the Federal Circuit or in the United States Court of Federal Claims.

■ The plaintiff's claim fails on both arguments. A court "always has—'jurisdiction to determine its jurisdiction.'" *Thomas Funding Corp. v. United States*, 15 Cl.Ct. 495, 499 n. 2 (1988)(quoting *Vecchione v. Wohlgemuth*, 426 F.Supp. 1297, 1309 (E.D.Pa.), *aff'd*, 558 F.2d 150 (3d Cir.), *cert. denied, Beal v. Vecchione*, 434 U.S. 943, 98 S.Ct. 439, 54 L.Ed.2d 304 (1977)). The fact that the District Court dismissed Synernet's APA claim against NASA without prejudice to allow Synernet to file the instant case in this court is not dispositive. "A party, or the court *sua sponte*, may address a challenge to subject matter jurisdiction at any time, even on appeal." *Booth v. United States*, 990 F.2d 617, 620 (Fed.Cir.1993); *see also United States v. Storer Broadcasting Co.*, 351 U.S. 192, 206 n. 1, 76 S.Ct. 763, 100 L.Ed. 1081 (1956) (stating that courts have the power to consider jurisdictional issues *sua sponte*); *Arctic Corner, Inc. v. United States*, 845 F.2d 999, 1000 (Fed.Cir.1988) (stating "[a] court may and should raise the question of its jurisdiction *sua sponte* at any time it appears in doubt."). Moreover, it is equally irrelevant that the defendant moved for judgment on the pleadings in the District Court case on the ground that the District Court did not have jurisdiction to render judgment on Synernet's APA claim and that the Court of Federal Claims had jurisdiction over the claim. Regardless of the defendant's argument in the District Court case, the defendant cannot be estopped from asserting lack of subject matter jurisdiction as a defense at any time; the court must review such a claim when it is raised.

This court, therefore, cannot, and will not, permit plaintiff to use collateral estoppel as a free pass into a court that does not have subject matter jurisdiction over its claim. As stated in *Vecchione*, "a judgment that issues without subject matter jurisdiction is void, and the principle of [collateral estoppel] does not of its own force breathe vitality into the judgment." 426 F.Supp. at 1309 n. 26.

*Thomas Funding Corp. v. United States*, 15 Cl.Ct. at 499 n. 2. Therefore, the court, hereby, grants the defendant's motion to dismiss the plaintiff's APA claim because this court lacks jurisdiction over the claim.

Despite the jurisdictional defectiveness of the plaintiff's APA claim in this court, the plaintiff's APA claim is unlikely to be successful in any event. The APA, in 5 U.S.C. § 701, "provides that the action of 'each authority of the Government of the United States,' ... is subject to judicial review except where there is a statutory prohibition on review or where 'agency action is committed to agency discretion by law.'" *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Section 702 of the APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. "Any person 'adversely affected or aggrieved' by agency action, see § 702, including a 'failure to act,' is entitled to 'judicial review thereof,' as long as the action is a 'final agency action for which there is no other adequate remedy in a court,' see § 704." *Heckler v. Chaney*, 470 U.S. 821, 828, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985).

The scope of review undertaken by a court in reviewing the action of a government agency is outlined in 5 U.S.C. § 706, as follows:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record of those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706.

When evaluating claims that the government has violated the APA, considerable deference is afforded to decisions made by government agencies. *Federal–Mogul Corp. v. United States,* 63 F.3d 1572, 1580–81 (Fed. Cir.1995). *See also Kisser v. Cisneros,* 14 F.3d 615, 618 (D.C.Cir.1994). The "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" standard is the general standard by which agency decisions are reviewed, however, the APA allows for two exceptions to the general rule. "In certain narrow, specifically limited situations, the agency action is to be set aside if the action was not supported by 'substantial evidence.' And in other equally narrow circumstances the reviewing court is to engage in a *de novo* review of the action and set it aside if it was 'unwarranted by the facts.'" *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. at 414, 91 S.Ct. 814 (citing 5 U.S.C. §§ 706(2)(E),(F) (1964 Supp. V)). "Review under the substantial-evidence test is authorized only when the agency action is taken

pursuant to a rulemaking provision of the Administrative Procedure Act itself, 5 U.S.C. § 553 (1964 ed., Supp. V), or when the agency action is based on a public adjudicatory hearing." *Id.* In the instant case, the award of the contracts by NASA and the administration of those contracts were not part of a rulemaking function by NASA and were not based on a public adjudicatory hearing.

Regarding *de novo* review under the APA, the Supreme Court has written:

De novo review of whether the Secretary's decision was "unwarranted by the facts" is authorized by § 706(2)(F) in only two circumstances. First, such *de novo* review is authorized when the action is adjudicatory in nature and the agency factfinding procedures are inadequate. And, there may be independent judicial factfinding when issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action.

*Id.* at 415, 91 S.Ct. 814 (citing H.R.Rep. No. 1980, 79th Cong. (1946)). Neither of these situations exists in the case at bar.

Under the "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" standard applicable under 5 U.S.C. § 706, a court also must determine whether the agency acted within the scope of its authority. *Id.* at 416, 91 S.Ct. 814. There is no question that NASA is vested with the authority to administer and terminate contracts. "Scrutiny of the facts does not end, however, with the determination that the [agency] has acted within the scope of [its] statutory authority." *Id.* Section 706(2)(A) requires the court to determine whether the actual choice made by the agency was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

The Supreme Court has directed that:

To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

*Citizens to Preserve Overton Park v. Volpe,* 401 U.S. at 416, 91 S.Ct. 814 (citations omitted). The court must determine if a rational connection exists between the relevant facts and the decisions that were made by the agency. *Kisser v. Cisneros,* 14 F.3d at 619. In this case, the errors that the plaintiff alleges in its complaint are found in paragraphs 13 and 14 of the complaint:

13. NASA's decision to assign the Dryden contract to the Woodside Summit Group was based upon false information received by NASA from the SBA that plaintiff lacked financial and technical strength and lacked engineering expertise, and was also based upon the SBA's recommendation that the Dryden contract be negotiated with the Woodside Summit Group. Prior to NASA's contract with Woodside Summit Group, plaintiff informed NASA that plaintiff's loss of the Dryden contract would cause plaintiff severe economic hardship. At the same time, the SBA informed plaintiff, falsely, the reason plaintiff was no longer receiving NASA contract work was because NASA had established unrealistic deadlines for the SBA to award Section 8(a) certification in favor of plaintiff.

14. Prior to plaintiff's entering into new NASA contracts, NASA did not advise plaintiff that it intended to transfer the Dryden contract work to another contractor. Moreover, when plaintiff attempted to renegotiate the terms of the new NASA contracts in order to increase plaintiff's overhead allowances so that plaintiff could achieve profitability on those new contracts, NASA refused to do so, with the result that plaintiff sustained substantial overhead costs in the new NASA contracts which were not offset by the Dryden contract work.

If the agency's decision demonstrates that it has carefully considered the evidence on both sides of the issues presented, the court is not required to re-weigh the evidence that was presented to NASA; in fact, such a re-weighing might not only be inappropriate as a matter of law, but also would not be practical. *See Simpson v. Young,* 854 F.2d 1429, 1433–34 (D.C.Cir.1988). The court must con-

sider whether NASA "ignored highly relevant evidence or formed a conclusion for which record support is absent or clearly inadequate to the commonsense observer." *Id.* at 1434 (citing *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. at 416, 91 S.Ct. 814). Moreover, NASA did not have to address each argument advanced by the plaintiff as the APA does not require "separate, specific rulings on *each* exception to a decision." *Id.* (emphasis in original). "The agency need only state the main reasons for its decision and indicate that it has considered the most important objections." *Id.* at 1435 (citations omitted). In addition, "the absence of formal findings [by the agency] does not necessarily require that the case be remanded" to the agency. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. at 417, 91 S.Ct. 814. While formal findings may be required in some cases, it is rare that such findings are required in the absence of a statutory directive. *Id.*

In the instant case, the plaintiff presents no factual support and the extensive record of contemporaneous documents included in the appendices that were filed by the parties offers no evidence to prove that NASA's decision to assign the Dryden contract to WSG was based upon false information or that NASA improperly refused to renegotiate the terms of its new contracts with the plaintiff. As stated above, when determining a motion to dismiss, the court should favorably construe the allegations of the complaint in favor of the pleader. *See Scheuer v. Rhodes,* 416 U.S. at 236, 94 S.Ct. 1683. The court, however, need not accept conclusory allegations that are not supported by any factual assertions. *See Briscoe v. LaHue,* 663 F.2d at 723. In the light most favorable to Synernet after a review of the allegations in its complaint and the exhibits included in the record, this court would find it difficult to construe NASA's decision to award the Dryden contract to WSG as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

In addition, the plaintiff alleges that the defendant violated the CDA, 41 U.S.C. §§ 601–613 (1994), "by failing to modify

plaintiff's contracts with NASA so that plaintiff could earn a fair profit in performing under NASA's contracts and other government sponsored set aside programs." The plaintiff, however, has not and cannot cite to a provision in the CDA which requires the defendant to modify contracts entered into with a contractor to ensure that the contractor earns a fair profit in performing the contract. Therefore, the plaintiff's claim, allegedly articulated under the CDA, fails to state a claim for which relief can be granted by the court.

The defendant asserts that this court lacks jurisdiction over the plaintiff's CDA claim because the plaintiff previously appealed the final decisions of the contracting officer to the NASA Board of Contract Appeals. Synernet filed a claim with the contracting officer under the CDA that requested modification of the Crow's Landing I contract for overhead allowances on June 6, 1988. The contracting officer issued a final decision that denied Synernet's June 6, 1988 claim on March 14, 1989. On May 1, 1989, Synernet appealed this final decision to the NASA Board of Contract Appeals, which docketed the appeal as NASA BCA No. 589–6. On August 8, 1988, Synernet filed a claim with the contracting officer under the CDA for reformation of the Crow's Landing II contract to eliminate indirect cost ceilings. The contracting officer issued a final decision that denied Synernet's August 8, 1988 claim on February 2, 1989. Synernet appealed this final decision on February 13, 1989 to the NASA Board of Contract Appeals. This appeal was docketed as NASA BCA No. 289–1. After the NASA Board of Contract Appeals denied NASA's motion for summary judgment in NASA BCA No. 289–1 on September 21, 1990, the plaintiff voluntarily dismissed both NASA BCA No. 289–1 and NASA BCA No. 589–6 on November 19, 1990, with prejudice.

■ A contractor makes a binding election to proceed before either the Court of Federal Claims or a Board of Contract Appeals, and may not seek relief on the same claim from both adjudicatory fora. *Bonneville Assocs. v. United States,* 43 F.3d 649, 653 (Fed.Cir.1994). The CDA provides plaintiffs a choice of filing an appeal from a contracting officer's final decision with an agency Board of Contract Appeals, 41 U.S.C. § 606, or the contractor may bring the claim directly in the United States Court of Federal Claims. 41 U.S.C. § 609(a)(1). This election of remedies is irrevocable once a contractor selects a forum in which to bring its appeal. *Mark Smith Const. Co., Inc. v. United States,* 10 Cl.Ct. 540, 542 (1986). A contractor who makes a knowing election to appeal to a Board of Contract Appeals and who files a timely appeal to a board may not subsequently voluntarily dismiss that appeal and file suit in the Court of Federal Claims. *See id.* at 544; *Prime Const. Co., Inc. v. United States,* 231 Ct.Cl. 782, 784, 1982 WL 25226 (1982). Based upon the record before the court, it is clear that Synernet elected its choice of forums when it filed its two appeals with the NASA Board of Contract Appeals.

■ Once it has been determined that a contractor selected a forum in which to bring its appeal, the only remaining issue is whether that election was "informed, knowing and voluntary." *Mark Smith Const. Co., Inc. v. United States,* 10 Cl.Ct. at 544 (citing *Prime Const. Co., Inc. v. United States,* 231 Ct.Cl. at 782). In the instant case, knowledge on the part of the contractor can be proven by looking at the contracting officer's final decisions which the plaintiff received. *See id.* at 545. Synernet was informed by the contracting officer of its right to appeal the contracting officer's final decisions to the NASA Board of Contract Appeals or directly to this court.[5] Thus, the plaintiff had knowledge

---

**5.** The contracting officer's February 2, 1989 letter that denied the plaintiff's August 8, 1988 request for reformation of the Crow's Landing II contract (NAS2–12333), and the contracting officer's March 14, 1989 letter that denied the plaintiff's June 6, 1988 request for modification of the Crows Landing I (NAS2–11835) contract both contained the following, identical language:

This is the final decision of the Contracting Officer. You may appeal this decision to the Board of Contract Appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the NASA Board of Contract Appeals, Code NC, Room 5065, 400 Maryland Avenue, S.W., Washington, D.C.

about its choice of fora in which to appeal the contracting officer's final decisions, and there is sufficient proof in this record that the plaintiff's decision was voluntary and informed and should be considered a binding election. *Id.* Synernet chose to bring its appeals to the NASA Board of Contract Appeals and cannot now bring the same claims in this court.[6]

## CONCLUSION

The court finds that it does not have subject matter jurisdiction over the plaintiff's

APA claim or over the plaintiff's CDA claim. Thus, the court, hereby, **DISMISSES** the plaintiff's complaint and **GRANTS** the defendant's motion to dismiss.

**IT IS SO ORDERED.**

20546, and provide a copy to the Contracting Officer from whose decision the appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. Instead of appealing to the Board of Contract Appeals, you may bring an action directly in the U.S. Claims Court (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. § 603, regarding Maritime Contracts) within 12 months of the date you receive this decision. If you appeal to the Board of Contract Appeals, you may, solely at your election, proceed under the Board's small claims procedure for claims of $10,000 or less or its accelerated procedure for claims of $50,000 or less.

6. The plaintiff chose not to address the defendant's argument on the election of the proper forum. Rather, the plaintiff focused on the defendant's alternative argument that Synernet's CDA claim is time barred because the contracting officer's final decisions were issued in 1989. Under 41 U.S.C. § 609(a)(3), a contractor must file its appeal in this court within twelve months of the date of receipt of the contracting officer's final decision. The plaintiff's argument on whether its claims are time barred or not, however, is moot because the plaintiff does not have a right to bring its claims in this court, having already elected to bring these same claims before the NASA Board of Contract Appeals.